Blake Goodman
Bar Number: 7436
**Law Offices of Blake Goodman**
900 Fort St Mall Ste 910
Honolulu, HI 96813
Ph: (808) 528-4274
blake@debtfreehawaii.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII**

| | |
|---|---|
| RIMON SLADE, | **Case No.: 1:24-cv-241** |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; SELF FINANCIAL, INC. D/B/A LEAD BANK, | 1. FCRA, 15 U.S.C. § 1681 *et seq.* |
| Defendants. | |

Plaintiff Rimon Slade ("Plaintiff"), by and through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendant Experian Information Solutions, Inc. ("Experian") and Defendant Self Financial, Inc. d/b/a Lead Bank ("Lead") (collectively "Defendants").

**<u>INTRODUCTION</u>**

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained

1

directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Experian regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Kapolei, County of Honolulu, Hawaii.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      Lead is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2. Lead has a principal office address located at 1801 Main Street Kansas City, Missouri 64108

9.      During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

10.      Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.      During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.      Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL BACKGROUND**

*The Role of Credit Reporting Agencies*

13.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.      The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     Experian is one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.     The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.     Experian's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Experian obtains consumer information from various sources. Some consumer information is sent directly to Experian, and other information must be independently gathered by Experian, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

20.     Experian also obtains information from other CRAs, who commonly share information.

21.     Experian regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Experian sells to third parties for a profit.

22.     The diligence Experian exercises in uncovering and recording consumer bankruptcy filings is not replicated in Experian's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.     Experian's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

24.     Experian knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

25.     Experian fails to conduct a reasonable investigation into a dispute when it fails to notice the self-evident information Experian already obtains regarding consumers.

26.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Experian) to make lending decisions.

27.     The information Experian includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

28.     FICO Scores are calculated using information contained in Experian's consumer reports.

29.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

30.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

31.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

32.     The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

33.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Experian in consumer reports.

34.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

35.     Experian regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Experian.

36.     A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

37.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

38.     Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

39.     Experian is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

40.     However, Experian regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

41.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Experian frequently reports information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.     Experian regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Experian's credit files, contained in public records that Experian regularly access, and/or sourced through Experian's independent and voluntary efforts.

43.     Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b) and failing to conduct a reasonable reinvestigation after receiving a dispute from a consumer is a violation of the FCRA at 15 U.S.C. § 1681i(a).

44.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Experian for its inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

45.     Therefore, Experian is on continued notice of its inadequate bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

<u>*Plaintiff's Bankruptcy and the Lead Account*</u>

46.     On or around February 28, 2020, Plaintiff filed a joint Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Hawaii, petition no. 1:20-bk-256.

47.     On or around June 2021, Plaintiff opened an account with Lead Bank, hereinafter "Lead Account."

48.     On December 3, 2022, Plaintiff converted his joint Chapter 13 Bankruptcy to a joint Chapter 7 Bankruptcy.

49.     Plaintiff received an Order of Discharge for his bankruptcy on March 6, 2023.

50.     Because the Lead Account was opened before Plaintiff's Chapter 13 Bankruptcy was converted to a Chapter 7 Bankruptcy, it was discharged when the Order of Discharge was entered.

<u>*The Inaccuracies on Experian's Consumer Reports*</u>

51.     On June 13, 2023, Plaintiff obtained copies of his credit report from Experian.

52.     In this credit report, Experian reported the Lead Account with a status of "Account charged off. $116 written off. $116 past due as of May 2022."

53.     Experian misrepresented the Lead Account by stating it was charged-off when it was actually discharged in Plaintiff's Chapter 7 Bankruptcy.

54.     This credit report was created after Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

55.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by Experian.

56.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Experian through multiple sources such as PACER, but Experian failed to review those sources or knowingly rejected them.

57.     Experian prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

58.     However, Experian failed to accurately report Plaintiff's Lead Account and failed to report the account as being a part of Plaintiff's Chapter 7 Bankruptcy.

59.     Upon information and belief, Experian received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

60.     Experian also obtains information from other CRAs (who commonly share information).

61.     Experian is aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

62.     Experian should have reported the Lead Account as an account that was included and discharged in Plaintiff's Chapter 7 Bankruptcy.

63.     Instead, Experian incorrectly reported the Lead Account, which was created before Plaintiff converted his Chapter 13 Bankruptcy into a Chapter 7 Bankruptcy, as a charged-off account when it was actually an account that was included and discharged in Plaintiff's Chapter 7 Bankruptcy.

64.     Experian inaccurately reported the Lead Account and failed to properly consider the Plaintiff's Chapter 7 Bankruptcy and the affect it had on relevant accounts.

65.     In any event, Experian knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

66.     If not patently inaccurate, Experian's inaccurate reporting of the Lead Account is materially misleading.

<u>*Failure to Investigate by Defendants*</u>

67.     Upon information and belief, Experian prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his Lead Account.

68.     Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

69.     On or around September 12, 2023, Plaintiff mailed a dispute letter to Experian, informing it about the misreported information that was being reported about the Lead Account.

70.     Plaintiff never received a response from Experian regarding the dispute letter sent by Plaintiff.

71.     On or around November 17, 2023, Plaintiff received and reviewed a new Experian credit report.

72.     The updated reporting by Experian still displayed the Lead Account as a charged off account with $116 written off.

73.     The updated Experian credit report still did not include that the Lead Account was discharged in Plaintiff's Chapter 7 Bankruptcy.

74.     Pursuant to 15 U.S.C. § 1681i(a)(2)(A), a CRA "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

75.     Upon information and belief, upon receipt of the dispute letter, Experian notified Lead of Plaintiff's dispute regarding the reported information.

76.     Upon receipt of the dispute of Plaintiff's account information from Experian, Lead failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed account.

77.     Had Lead done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Lead that the account was discharged in bankruptcy and should be reported as discharged.

78.     Despite the dispute by the Plaintiff that the information on his consumer reports was inaccurate with respect to the Lead Account, Experian did not timely evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not reasonably verify that the derogatory information concerning the disputed accounts was inaccurate.

79.     Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade lines within 30 days of receiving Plaintiff's dispute letter.

80.     Had Experian done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Experian that the Lead Account was discharged in Plaintiff's Chapter 7 Bankruptcy and should be reported as such.

81.     Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

82.     Notwithstanding Plaintiff's efforts, Experian continues to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

83.     As a result of Experian's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

## *Plaintiff's Damages*

84.     As a preliminary matter, Experian failed to report the Lead Account accurately because Defendants reported it as a charged off account when it was actually discharged in Plaintiff's Chapter 7 Bankruptcy.

85.     Plaintiff's creditworthiness is lowered because Defendants reported the Lead Account as a debt that was charged off with a balance that Plaintiff is still obligated to pay.

86.     As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of the Lead Account.

87.     Experian's consumer report failed to report the Lead Account and Plaintiff's Chapter 7 Bankruptcy appropriately, which causes severe damage to Plaintiff's creditworthiness and his financial wellbeing.

88.     Upon information and belief, on or around January of 2024, Credit One Bank received copies of Plaintiff's credit reports from Experian in relation to a credit card application.

89.     Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by Defendants.

90.     As a direct result of Defendants' inaccurate reporting and failure in investigating disputes, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

91.     As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred.

92.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## **COUNT I**

### *VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)*

93.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

94.     Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Experian, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

95.     Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-conversion accounts after a consumer receives a Discharge Order.

96.     Experian received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Experian through sources of consumer information such as Lexis-Nexis, Experian's own files, and information provided by data furnishers, yet Experian misapplied that information.

97.     Experian's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file conversions to Chapter 7 Bankruptcies.

98.     Experian's unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

99.     Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681e(b).

100.    Experian knows the information that it reports about consumers' bankruptcies is often inconsistent with public records and their own files.

101.    However, Experian failed to report a pre-conversion account accurately, reporting it instead as a charged off account when it was actually included and discharged in Plaintiff's Chapter 7 Bankruptcy.

102.    Experian's failure to maintain and employ reasonable procedures to assure the information it reports is accurate is particularly egregious because Experian regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

103.    Experian knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

104.    Experian knew or should have known that it is obligated, by the FCRA, to update its consumer reports and the relevant tradelines.

105.    Experian knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge only the statutorily dischargeable debts that were created prior to conversion to a Chapter 7 Bankruptcy.

106.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Experian.

107.    Therefore, Experian has ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

108.    If Experian contends that it did not have sufficient notice, Experian must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file conversion to Chapter 7 Bankruptcy.

109.    Experian regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

110.    When Experian received notice of Plaintiff's bankruptcy information, it had an obligation to ensure that it reported Plaintiff's discharge and its effects with maximal accuracy, and to not report non-bankruptcy accounts as included in the bankruptcy.

111.    Unfortunately, Experian willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

112.    Despite knowledge of its legal obligations, Experian violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

113.    Experian knows that a debt that was discharged in a bankruptcy should be reported as discharged on credit reports and a debt that was not discharged in a bankruptcy should not be reported as discharged.

114.    Experian knew or should have known the information it reported about the Lead Account was inaccurate.

115.    Experian violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Experian knew or should have known that the information Experian is reporting is inaccurate, and/or otherwise contradicted by information known by Experian, reported to Experian, and/or reasonably available to Experian.

116.    Experian's violations of 15 U.S.C. § 1681e(b) were willful.

117.    Alternatively, Experian's violations of 15 U.S.C. § 1681e(b) were negligent.

118.    Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

119.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Experian for failing to report the Lead Account accurately, since it was an account that was discharged in Plaintiff's bankruptcy.

120.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

121.     Experian is a direct and proximate cause of Plaintiff's damages.

122.     Experian's actions are substantial factor in Plaintiff's damages.

123.     Therefore, Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT II

### *VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)*

124.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

125.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), after receiving a notice of dispute from a consumer, a credit reporting agency is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."

126.     Pursuant to 15 U.S.C. § 1681i(a)(5)(C), "[a] consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph."

127.     Plaintiff mailed Experian a dispute letter regarding the Lead Account on or around September 12, 2023.

128.     After receiving the dispute letter, Experian should have realized that the Lead Account was created before Plaintiff's conversion to a Chapter 7 Bankruptcy and is an account that can be discharged when an Order of Discharge is entered.

129.     Plaintiff's dispute letter points out the issues with Experian's credit report, which were erroneous because the Lead Account, which was discharged, was instead reported as in collections and charged off.

130.     Experian violated 15 U.S.C. § 1681i(a) by failing to delete inaccurate information from Plaintiff's credit file after receiving actual notice of such inaccuracies and failing to conduct a reasonable reinvestigation.

131.     Experian failed to maintain policies and procedures to adequately respond to a dispute by a consumer regarding information contained in its reports.

132.     Experian's negligently and/or willfully violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation into the disputed information from Plaintiff's dispute letters and correcting the inaccurate information reported pertaining to the Lead Account.

133.     Experian's post-dispute credit report still contain wrong information pertaining to the Lead Account.

134.     Experian's unreasonable policies and procedures causes it to routinely fail at conducting a reasonable investigation regarding the disputed information.

135.     Experian's unreasonable policies and procedures causes it to regularly report consumer information without verifying its accuracy even after receiving a dispute from a consumer.

136.     Experian knows that in response to a dispute letter from a consumer, it must conduct a reasonable investigation into the dispute and must clarify any mistake or error made by Experian on any credit reports.

137.     Experian's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' pre-conversion accounts is particularly egregious because it regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

138.     Experian's inadequate procedures damaged Plaintiff's creditworthiness.

139.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Experian's failure to respond to his dispute letter and update the disputed tradelines.

140.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

141.   Experian's actions are a direct and proximate cause of Plaintiff's damages.

142.   Experian's actions are a substantial factor in Plaintiff's damages.

143.   Therefore, Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT III

### *VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2*

144.   Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

145.   Pursuant to the FCRA, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report. *See* 15 U.S.C. § 1681s-2.

146.   Pursuant to the FCRA, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency. *See* 15 U.S.C. § 1681i(a)(2)(A).

147.   The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from

a furnisher such as Continental must be reported to all other agencies which were supplied such information. *See* 15 U.S.C. § 1681s-2(a)(2).

148.    Upon information and belief, Experian notified Lead of the Plaintiff's dispute regarding his account.

149.    Upon receipt of the dispute of the account from the Plaintiff by Experian, Lead failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed accounts.

150.    Lead violated 15 U.S.C. § 1681s-2 by:

   a.  failing to fully and properly investigate the dispute of the Plaintiff;

   b.  by failing to review all relevant information regarding the same; and

   c.  by failing to correctly report results of an accurate investigation to the credit reporting agencies.

151.    As a result of the conduct, action and inaction of Lead, Plaintiff suffered damages for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

152.    The conduct, action and inaction of Lead was willful, rendering them liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

153.    Alternatively, the conduct, action and inaction of Lead was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

154.    Lead's procedures damaged Plaintiff's creditworthiness.

155.    Lead's actions are a direct and proximate cause of Plaintiff's damages.

156.     Lead's actions are substantial factors in Plaintiff's damages.

157.     Therefore, Lead is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Experian Information Solutions, Inc., and Defendant Lead Bank for the following:

(a)     Declaratory judgment that Experian violated the FCRA, 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a);

(b)     Declaratory judgement that Lead Bank violated the FCRA, 15 U.S.C. § 1681s-2;

(c)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(g)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

Dated: June 5, 2024                    Respectfully submitted,

*/s/ Blake Goodman*
Law Offices of Blake Goodman, PC
Blake Goodman, Esq.
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
(808) 528-4274
blake@debtfreehawaii.com
*Counsel for Plaintiff*


*/s/ Yaakov Saks*
Stein Saks, PLLC
By: Yaakov Saks, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
Phone: 201-282-6500
Fax: 201-282-6501
ysaks@steinsakslegal.com
*Pro Hac Vice Pending*